UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

Case No. 14-20383-1

Honorable Nancy G. Edmunds

v.

SYLVESTER BOSTON, SR.,

    Defendant-Petitioner.

_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE [365]**

Defendant-Petitioner Sylvester Boston, Sr. filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. (ECF No. 365.) The United States filed a response. (ECF No. 370.) Defendant filed a reply captioned Petitioner's Amended 28 U.S.C. § 2255 Motion. (ECF No. 373.) This Court is familiar with the previous proceedings, and has reviewed the pleadings and supporting documentation. The motion, briefs, and materials submitted by the parties, and the records of the case conclusively show that the Defendant is entitled to no relief; the Court finds that a hearing on this matter is not necessary. *See* 28 U.S.C. § 2255(b); *see also Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (no evidentiary hearing is necessary "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). The Court being sufficiently advised, it hereby denies Defendant's motion to vacate, set aside or correct his sentence.

## I. Background

A grand jury returned an indictment against Defendant and eight others on July 1, 2014. (ECF No.1.) On May 3, 2016, the grand jury returned a third superceding indictment against Defendant, his son Sylvester Boston, Jr., and one other defendant. (ECF No. 196.) On May 17, 2016, Defendant pleaded guilty to Counts One and Eight of the Third Superceding Indictment pursuant to a Rule 11 Plea Agreement. (Rule 11 Plea Agr., ECF No. 204.) Count One is conspiracy to possess with intent to distribute, to distribute and to manufacture controlled substances, to wit: Benzylpiperazine (BZP). (*Id.*) Count Eight is distribution of a controlled substance, to wit: heroin. (*Id.*)

The factual basis for Defendant's guilty plea as set forth in the Rule 11 agreement includes the following:

> That between January, 2013 and July, 2014, the defendant conspired with other co-defendants, including but not limited to Sylvester Boston, Jr., Rodney Duane Reaves, Nikito Kruchev Merchant, Jr. and others, to possess with the intent to distribute, to distribute, and to manufacture pills containing Benzylpiperazine (BZP) and Benzylpiperazine (BZP) powder.
>
> It was part of the overall agreement that the defendant and his son, Sylvester Boston, Jr., ordered a high-end pill press from China, and had it delivered to defendant's business, S&B Computers, located in Detroit, Michigan. Thereafter, defendant's son, Sylvester Boston, Jr., manufactured Molly/ecstasy pills containing BZP, at S&B computers, using the pill press (and another pill press), including with the assistance of Nikito Merchant and others. As part of the agreement, defendant also participated, along with Sylvester Boston Jr., Rodney Reaves, Nikito Merchant and others, in the distribution of both Molly/ecstasy pills containing Benzylpiperazine (BZP) and Benzylpiperazine (BZP) powder (Molly powder), to others (from S&B Computers).
>
> Defendant and each of his co-conspirators, including Sylvester Boston, Jr. and Nikito Merchant, specifically knew that the Molly/ecstasy pills manufactured and sold from S&B Computers contained an unlawful controlled substance and specifically knew that the pills were manufactured using both the controlled substance and filler material (including caffeine).

> Indeed, defendant participated in conversations with his co-conspirators, including Sylvester Boston, Jr., in which it was discussed that the pills being manufactured and sold contained an unlawful controlled substance (*i.e.,* that the pills were not simply caffeine pills).
>
> Additionally, within the time-frame alleged in the indictment, specifically between August, 2013 and September, 2013, the defendant conspired with other co-defendants, including but not limited to Sondai Harris, Norman Christopher Ivory, Raymond Thomas, Jr., and others, to possess with the intent to distribute heroin. It was part of the overall agreement that the co-defendants Harris, Ivory and Thomas would distribute significant quantities of heroin to an individual who turned out to be a confidential informant. These heroin transactions, which took place at S&B Computers in Detroit, were set up and brokered by Sylvester Boston, Sr. Additionally, as part of these transactions, defendant distributed "sample" quantities of heroin to the confidential informant, including the knowing and intentional distribution of a heroin sample on August 23, 2013 (at S&B Computers in Detroit, Michigan). For purposes of relevant conduct, the parties stipulate that this conspiracy involved in excess of 100 grams of heroin as reflected in the attached worksheets. The defendant entered into this agreement with full knowledge and intent to possess with the intent to distribute the heroin and to distribute heroin.
>
> . . . .
>
> The parties stipulate that this conspiracy (including relevant conduct) involved in excess of 58,000 grams of BZP and approximately 400 grams of heroin, as reflected in the attached worksheets. The defendant and his co-conspirators entered into these agreements with full knowledge and intent to possess with the intent to distribute, and to distribute, BZP (molly/ecstasy) pills, BZP (molly/ecstasy) powder and heroin.

(Rule 11 Plea Agr. 3-6, ECF No. 204.)

On August 23, 2017, the Court sentenced Defendant to a total of 96 months on each count to be served concurrently, followed by three years of supervised release for each count, to run concurrently. (Am. Judgment, ECF No. 310.) Defendant did not file an appeal.

On August 14, 2018, the Court docketed Defendant's August 9, 2018 motion to vacate sentence under 28 U.S.C. § 2255. (Def.'s Mot., ECF No. 365.) Defendant alleges that his counsel was ineffective in (1) failing to raise his competency during the plea, (2)

3

failing to file a motion to dismiss the indictment "for law enforcement's egregious conduct", (3) failing to attack the wire tap warrant, (4) failing to conduct pre-trial investigation and prepare a defense, and (5) failing to object to the information contained in the presentence investigation report (PSR) and the sentencing enhancements. (ECF No. 365.)

## II.    Standard

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "It is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citations omitted). "[C]laims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). And "[i]t is equally well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

Defendant did not take a direct appeal and he waived his right to appeal in his Rule 11 Plea Agreement. *See Rivera v. Warden, FCI, Elkton*, 27 F. App'x 511, 515 (6th Cir. Nov. 20, 2001) (citing *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996)). However,

4

"ineffective-assistance claims are subject to review in the district court, having been timely raised in the petitioner's § 2255 motion." *See Jackson v. U.S.*, 45 Fed. Appx. 382, 385 (6th Cir. 2002) (citing *Hughes v. United States*, 258 F.3d 453, 457, n.2 (6th Cir. 2001) (holding that petitioner did not procedurally default his ineffective assistance of counsel claim by failing to raise it on direct appeal)). The breadth of the claims which Defendant presents in his motion appears to be in part an attempt to argue substantive claims, including those for which he waived consideration by his Rule 11 Agreement, by couching them as ineffective assistance of counsel claims.

### III. Analysis: Ineffective Assistance of Counsel

The *Strickland* analysis applies to claims of ineffective assistance of counsel. *Strickland* requires a petitioner to show: (1) counsel's performance was deficient by falling "below an objective standard of reasonableness" and (2) counsel's deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 688, 693-94 (1984). To demonstrate prejudice, Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

There is a strong presumption in favor of counsel's effectiveness. *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (holding that counsel's performance be examined "from counsel's perspective at the time of the alleged error and in light of all the circumstances," a highly deferential standard) (internal citation omitted). The Supreme Court has advised that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "[t]he availability of intrusive post-trial inquiry into attorney performance

or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges"; it could threaten the adversarial process that the Sixth Amendment right to counsel was designed to serve. See *Strickland*, 466 U.S. at 689-90.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citations omitted). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Id.* "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* at 163. The Supreme Court noted that in a prior case, "when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 163 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

**A. Defendant's Claim That Counsel Failed To Raise Defendant's Competency As A Defense**

First, Defendant argues that counsel was deficient in failing to raise his mental health history as a defense. He alleges that had counsel presented his mental health history "it's most likely the Court would have deemed him incompetent during the time of the alleged crime and plea process." (ECF No. 365, p. 4.) The government responds that Defendant failed to comply with Rule 2 of the Rules Governing Section 2255 cases, because he did

not set forth any facts entitling him to relief, nor specify what relief he requests, but only offers "bare conclusions." (Gov't's Resp., ECF No. 370, p. 11.) After the government filed its response, Defendant filed a "reply" that he captioned an "amended 2255" which provided more detail for the claims raised in the initial 2255 motion. (ECF No. 373.)

With his reply, Defendant filed a Department of Veterans Affairs (VA) decision dated April 26, 2012, which noted that evidence showed he had been diagnosed with acquired psychiatric disorder, to include posttraumatic stress disorder, depression and claustrophobia. (ECF No. 373, p. 13.) The VA decision also noted that he had been followed for mental health treatment. (*Id.*) Defendant argues that in April 2012, he was noted to be a threat to himself as demonstrated by "active hallucination: auditory, tactile or visual." (Progress Notes, ECF No. 373, p. 15.) Defendant alleges that he was on "numerous different psychotropic medications" and was being treated by the VA "during the time frame when the alleged crime was committed."[1] (ECF No. 373, p. 3.)

Included in his mental capacity argument is Defendant's assertion that the confidential informant ("CI") used information about Defendant's "fragile state" and "diminished mental capacity" to "create a crime to save his own neck." (ECF No. 373, p. 3.) Despite Defendant's argument that he told the CI "whatever he wanted to hear," Defendant pleaded guilty and confirmed the facts of the charges both at the hearing and with the Rule 11 Agreement.

---

[1] Defendant stated that he would provide a list of medications at a later date. The list was not provided. The VA records show treatment possibly as late as April 2012 (the date of the records), and Defendant's testimony at the plea hearing was that he last sought treatment in 2011. The crimes charged and of which he was convicted spanned the period from January 2013 to July 2014, not the time period for which there is evidence of treatment. (ECF No. 204, p. 3; ECF No. 196.)

The Supreme Court test for determining whether a criminal defendant is competent to stand trial is whether the accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). It is the same standard as the test for competency to enter a guilty plea. *See Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983) (citing *Dusky*).

The Court questioned Defendant at the May 17, 2016 plea hearing as follows:

> The Court: You have your attorney, . . . , beside you in court today. Have you discussed this matter with him?
>
> The Defendant: Yes, several times.
>
> The Court: Are you satisfied with his advice and with the legal services that he's performed on your behalf?
>
> The Defendant: Yes, he's very competent, yes.
>
> The Court: Good. Do you understand that you have the right to plead not guilty to every charge filed against you?
>
> The Defendant: Yes, ma'am, I understand that.

(ECF No. 350 pp. 8-9.) The Court then recited the constitutional rights that Defendant was going to waive in order to plead guilty. (ECF No. 350 pp. 9-10.)

The transcript from the plea hearing shows that the Court was aware of Defendant's past mental health conditions, history of treatment, and medication. At the plea hearing, Defendant testified that he had been treated through Henry Ford Hospital and the Veteran's Administration for mental illness, that he was not currently under treatment for mental illness, and that he had last sought treatment for mental illness in 2011. (Plea Hearing Tr. 7, ECF No. 350.) He testified that he was not presently taking medication for a mental

8

condition. (ECF No. 350, p. 7.) After questioning, the Court found Defendant competent to proceed in the plea hearing. (ECF No. 350, p. 8.)

The Sixth Circuit has "previously inferred that a finding that a defendant was competent to enter a plea agreement precludes a finding that the defendant's counsel was ineffective for not pursuing the competency issue." *Devine v. Commonwealth*, 1999 WL 551400, at *3, 187 F.3d 635 (6th Cir. 1999) (unpublished) (citing *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)); *see also U.S. v. Davidson*, 2008 WL 170507 (E.D. Ky. Jan. 17, 2008).

Further, "the standard . . . for requiring competency hearings prior to trial or the entry of a guilty plea is not merely whether extant evidence raises 'doubt' as to the defendant's capacity to stand trial, but rather whether evidence raises a bona fide doubt as to a defendant's competence.' *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004) (citation omitted). The evidence here does not. Defendant's participation in the plea hearing and questioning by the Court did not raise a doubt as to his competency.

In connection with the count relating to mental competency, Defendant also argues that he "maintained he was selling [the CI] Ecstasy yet, the [Defendant] was selling him BZP pills." (ECF No. 373, p. 3.) He argues that Ecstasy/Molly is an entirely different Schedule I drug than BZP, yet the agents logged evidence obtained by the CI as "Ecstasy." (*Id.*) Defendant alleges that he and the CI "both thought they were dealing in Ecstasy as the entire record supports this contention (Taped Controlled buys, Law Enforcement Documentation, etc.)." (ECF No. 373, p. 4.) He argues that because he was "not mentally stable during the time the alleged crimes were committed and Counsel was incompetent to raise this issue for his Defense, Movant's plea was unknowing." (ECF No. 373, p. 4.)

9

Defendant cites *United States v. Beckley*, No. 10-1968, 515 Fed. Appx. 373 (6th Cir. Feb. 13, 2013), to argue that "Ecstasy/Molly is entirely (sic) different Schedule 1 drug than BZP". (ECF No. 373, p. 3-4 of 67.) In *Beckley*, the district court calculated a guidelines range based on a determination that BZP most closely resembled methylenedioxymethamphetamine (more commonly known as ecstasy). *See Beckley*, 515 Fed. Appx. at 374-75. The court of appeals held that there was no evidence to support this finding and remanded for recalculation of the Guidelines range and resentencing. *Beckley* arose prior to BZP being included in the Guidelines Drug Equivalency Tables; it was included just prior to the Sixth Circuit's consideration in *Beckley* of the district court's equivalency findings with respect to BZP. *Id.* at 377. In the case at bar, BZP and Heroin were the only controlled substances that were the basis of this case when it was presented to the Grand Jury, as listed in the indictment, and as considered for the plea and sentencing. (ECF Nos. 196, 204, 310.)

Benzylpiperazine or "BZP" was one of two Schedule I controlled substances listed in the indictment, the other being heroin. (ECF No. 196.) By the plea agreement, Defendant agreed that he, along with others, participated "in the distribution of both Molly/ecstasy pills containing Benzylpiperazine (BZP) and Benzylpiperazine (BZP) powder (Molly powder), to others (from S&B Computers)." (ECF No. 204, p. 3.) As discussed in further detail below, Defendant was charged and convicted of conspiracy with other specifically identified co-defendants. The parties stipulated that the "conspiracy (including relevant conduct) involved in excess of 58,000 grams of BZP and approximately 400 grams of heroin, . . . ." (ECF No. 204, p. 6.) At the plea hearing, the Government introduced Count I as "conspiracy to manufacture, to distribute and to possess with intent to distribute BZP, . . . ." (ECF No. 350,

p. 4.)

As this Court pointed out in a prior Opinion and Order regarding another of the co-Defendants on a similar issue, "the Sixth Circuit Criminal Pattern Jury Instruction 14.05 provides, to be guilty of a drug trafficking conspiracy under 21 U.S.C. § 846, [Defendant] did not even have to know that the drug involved was BZP. It is enough that he knew that the material was some kind of controlled substance." (ECF No. 347, at 11 (*citing* Sixth Circuit Criminal Pattern Jury Instruction 14.05)); *see also United States v. Mahaffey*, No. 19-6061, 2020 WL 7414640, at *1 (6th Cir. Dec. 18, 2020) (upholding precedent of nearly twenty years, wherein the Sixth Circuit "has held that a drug-trafficking conviction under 21 U.S.C. § 841 does not require proof that the defendant knew the type or quantity of controlled substance involved in the offense").

The Court had notice of Plaintiff's past mental health treatment and conditions and found him competent at the trial. Defendant has not demonstrated facts that could lead the Court to find that relief is appropriate based on lack of competency or his counsel's failure to raise that issue. There is no basis for finding that counsel performed ineffectively or that counsel's assistance was unreasonable with respect to presenting Defendant's prior mental health problems to the Court or other issues raised in Defendant's first claim. Even if Counsel's performance had been deficient, Defendant has not attempted to show that there is a reasonable probability that he would not have plead guilty.

**B. Defendant's Claim That Counsel Failed To Challenge Law Enforcement's Egregious Conduct**

In ground two, Defendant argues that his attorney was incompetent for failing to file a motion "to dismiss the indictment for law enforcement's egregious conduct." (ECF No.

365, p. 5.) Defendant alleges that law enforcement used a CI whose "S-visa" was well beyond expired, and that they made assurances to the CI that if he assisted in obtaining a conviction against Defendant and his co-Defendants, then the CI would be granted asylum for assistance. (ECF No. 365, p. 5.) He asserts that "the expired S-Visa CI created a crime where none existed with the assistance of Homeland Security Officers, and [en]trapped Movant." (ECF No. 365, p. 5.)

In support of his argument, Defendant includes as an exhibit an August 18, 2011 news article titled "*60 arrested in El Cajon Chaldean organized crime case*." The article describes the search and seizure, as well as serving of warrants at a Chaldean social club in El Cajon, California. The article makes reference to the trafficking of "illicit products" and narcotics on to the Chaldean Organized Crime Syndicate in Detroit. (Exh. 6, ECF No. 373, p. 45.) Defendant also provides a 2016 Rule 11 Plea Agreement from another case, by the individual he alleges was the CI in his case, wherein the CI pled guilty to one count of Misprison of a Felony, 18 U.S.C. § 4. (Exh. 7, ECF No. 373, p. 49.) This Rule 11 Agreement contains a *Padilla* waiver in which the CI "acknowledges that he is not a citizen of the United States, and that his guilty plea in this case may affect or even foreclose his eligibility to remain in this country following the imposition of sentence herein." (ECF No. 373, p. 53.)

Defendant references his Exhibits 5 and 6 to support his allegations, but they do not support the claims. (ECF No. 373, p. 7.) Defendant has not provided a basis for his accusation that "Homeland Security Officers investigating Movants (sic) case made assurances to the CI if he assisted law enforcement in obtaining a conviction against Movant and his co-defendants the IC would be granted asylum for assistance." (ECF No.

365, p.5.) Defendant goes on to argue that "If [the CI] was ever afforded a S-1 Visa, he should have lost it in the wake of 9/11." (ECF No. 373, p. 9.) He cites a 2017 Department of Homeland Security memorandum, which well post-dates the events at issue herein. (ECF 373, p. 9.)

The Government disputes the factual basis of Defendant's allegations and argues that the CI was at all relevant times a green card holder, a legal permanent resident. (ECF No. 370, p. 16.) The Government maintains that the CI did not receive, nor ever received the S-nonimmigrant classification, nor was he given assurances of being granted asylum. (ECF No. 370, 16.) The Government points out that any alleged promises of asylum would only be relevant as *Giglio* information with respect to a trial witness's credibility. *See Giglio v. United States*, 405 U.S. 150 (1972); *see also U.S. v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988) (In considering the timing of disclosure of impeachment evidence including *Brady* material and *Giglio* information, the Court noted that "[p]reserving the defendant's ability to defend himself effectively at trial is the underlying purpose of the criminal discovery rules. Therefore, so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated."); and *U.S. v. Driver*, 2011 WL 761496 (E.D. Mich. Feb. 25, 2011) (ordering the government to make *Giglio* information available within five days of trial and citing *Presser*).

The Government asserts that it is unaware of any statute or precedent holding that the Government cannot use information obtained via a CI after his or her S-nonimmigrant classification has expired. Indeed, Defendant cites no law to foreclose the possibility. Even if such alleged promises were relevant as *Giglio* information, in light of precedent regarding

the timing of such disclosures prior to trial, Defendant's attorney was not ineffective in failing to file a motion relating to the CI's status. Further, Defendant has failed to provide a factual or legal basis for these claims. Defendant's counsel is not required to raise frivolous arguments. *See Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not exist."). The Court will deny this claim.

### C. Defendant's Claim That Defense Counsel Failed To Attack The Listening Device Warrant

Defendant alleges that his attorney during pre-trial investigation should have "requested a 'Franks' hearing to attack the truthfulness of law enforcements (sic) probable cause affidavits obtaining the warrant." (ECF No. 365, p. 7.) Defendant alleges that State of Michigan law enforcement exhibited reckless disregard for the truth and committed perjury in the affidavit of probable cause submitted to the court to obtain a wire tape warrant to install a listening device inside of the pill press delivered to Defendant's business location. (ECF No. 365, p .7.) He argues that, had his counsel requested a *Franks* hearing, the "fruits of the warrant would have been suppressed" and thus dismantled the Governments' case in chief. Defendant does not identify which basis for the warrant was untruthful and provides no further support for this claim in his reply/amended § 2255 motion.

In response to Defendant's allegations related to the installation of a "listening device," the Government responds that "no 'listening device' was ever sought or installed" and that the Government suspects Defendant is referring to a search warrant that permitted installation of a GPS tracking device inside the pill press. (ECF No. 370, p. 18.) Defendant's exhibits support this suggestion and show that a search warrant was issued that permitted

14

installing, maintaining and removing a mobile tracking device in the automatic pill press (manifested as a drill press) that had shipped from Shanghai, China, to "S&B Computers & Herbal Goods." (Def.'s Reply, Ex. 5, ECF No. 373, p. 37.) Despite the general allegations in his initial § 2255 motion, Defendant does not show that a wire tap warrant was sought to install a listening device inside the pill press, nor how a law enforcement officer "with reckless disregard for the truth committed perjury in their affidavit of probable cause" submitted to obtain a wire tap warrant. (ECF No. 365, p. 7 of 15.) The exhibits which Defendant provided refer to only a mobile tracking device. Defendant's claim regarding a perjured affidavit in support of a listening device warrant is "stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof," and the claim is "thus, legally insufficient to sustain a review." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974); *see also McConnell v. United States*, 162 F.3d 1162, 1998 WL 552844, at *2 (6th Cir. Aug. 10, 1998).

    In "Ground 2" of his reply/amended 2255 motion, Defendant alleges slightly different grounds as a basis for this count. Defendant submits a declaration alleging that the CI contacted him "numerous times from 2007-2013 attempting to have [Defendant] sell him guns and various kinds of drugs." (ECF no. 373, p. 4, Ex. 4, p. 33.) Defendant alleges that at that time, the CI left his phone number with Defendant and contacted him a couple more times. (ECF no. 373, p. 4.) In his reply, Defendant alleges that in February 2013, S&B Computers' voice activated anti-burglary audio surveillance system captured the CI "advising [Defendant] on the advantages of importing a pill press from China whereby he (Boston Sr.) could custom tailor [the CI's] pills, thereby maximizing his profits. . . . ." (Def.'s

15

Reply, Ex. 4, ECF No. 373, p. 5.) In his declaration, Defendant stated that "[CI identified by name] insisted I purchase a pill press from his contact in Shanghai, China," and he "told me that he had done business with the Shanghai China Company in the past with his associates with the Iraqi Mafia and never had any issues." (Decl., ECF No. 373, p. 33.)

Defendant goes on to argue that the evidence fails to establish that he conspired to import drugs into the United States with any person other than the informant, who cannot, as a matter of law, be a conspirator. (ECF No. 373, p. 6.) Defendant relies on *United States v. Arbane*, which holds that "[i]t is axiomatic that you cannot have a conspiracy without an agreement between two or more culpable conspirators. If there are only two members of a conspiracy, neither may be a government agent or informant who aims to frustrate the conspiracy." *United States v. Arbane*, 446 F.3d 1223, 1228 (11th Cir. 2006) (citations omitted).

As an initial matter, the chief focus of Defendant's claim appears to be that the evidence does not support the conviction. "[A] challenge to the sufficiency of the evidence is not cognizable under § 2255." *McConnell v. United States*, 1998 WL 552844, at *2. As an initial matter, the heroin count, which involved the CI, was not a conspiracy charge. (Plea Agreement, ECF No. 204.) With respect to the other count, in the Rule 11 Plea Agreement, the statement of facts to which Defendant agreed and pled was that he conspired with other specifically identified co-defendants (not including the CI), "to possess with the intent to distribute, to distribute, and to manufacture pills containing Benzylpiperazine (BZP) and Benzylpiperazine (BZP) powder." (Rule 11 Plea Agreement, ECF No. 204.) The facts also state that it "was part of the overall agreement that the defendant and his son, Sylvester Boston, Jr., ordered a high-end pill press from China, and

had it delivered to defendant's business, S&B Computers, located in Detroit, Michigan" and that thereafter, the Defendant's son manufactured the pills using that pill press and another pill press, including with the assistance of another named defendant (not the CI)[2]. (ECF No. 204.) Defendant attempts to direct attention to only the CI and the specific "objective of importing the pill press into Detroit," (ECF No. 373, p. 6), which ignores the actual charges, the elements of the conspiracy charge and the named co-conspirator Defendants who are included in the indictment and the Rule 11 Plea Agreement. Defendant's claim is unsupported by reference to proof, or a legal theory, that would provide a basis for finding that his counsel erred. Further, Defendant has not shown a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The Court will deny Defendant's claim.

### D. Defendant Alleges That Defense Counsel Was Incompetent For Failing To Conduct Any Sort Of Pre-Trial Investigation And Prepare A Defense For The Alleged Crimes

Defendant argues that counsel was "incompetent" for failing to contact the first witness on a list of witnesses Defendant provided to counsel and failing to investigate Defendant's alleged "audio/video footage of the government's CI committing Federal crimes" in order to attack the CI's credibility. (ECF No. 365, p. 8.) As the Government correctly points out, Defendant fails to identify any specific witnesses or video/audio recordings, the relevant subject matter of either, and how they may have helped his case. Nor does Defendant provide any further detail in his reply/amended 2255. Defendant does

---

[2] Defendant Boston Jr. also pleaded to facts including that it was "part of the overall agreement that the defendant and his father, Sylvester Boston, Sr., ordered a high-end pill press from China, and, in May, 2013, had it delivered to defendants' business, S&B Computers, . . . ." (Boston Jr., Rule 11 Plea Agreement, ECF No. 298, p. 3 of 22.)

not show that there is a reasonable probability that he would have gone to trial instead of pleading guilty, had counsel investigated these as yet unidentified witnesses or recordings. The argument remains undeveloped and conclusory; there is no basis to sustain a review of Defendant's claim. *Short*, 504 F.2d at 65; *see also McConnell, supra*. This claim will be denied.

### E. Defendant's Claim That Defense Counsel Was Ineffective For Failing To Object To The Enhancements Imposed During Sentencing

Finally, Defendant claims that "Defense Counsel failed to object to the information contained in the PSR which caused Movant's overall guideline range to be higher. Had Counsel objected, Movant would have received a lesser sentence." (ECF No. 365, p. 10.) Defendant does not expand on this argument in his reply/amended 2255 and the transcripts of the plea and sentencing hearings, as well as Defendant's sentencing memorandum, prepared by his counsel, show that Defendant's counsel consistently objected to and argued against two different scoring enhancements.

At the plea hearing, the Government acknowledged on the record that the parties disagreed as to the application of the guideline provision at sentencing guidelines 3B1.1, the aggravating role, with the Government contending that two points should be scored pursuant to that provision, and Defendant and his counsel taking the position that no points should be scored under aggravating role. (Plea Hearing Tr., ECF No. 350, pp. 19-20.) In his sentencing memorandum and at the sentencing hearing, Defendant's counsel again raised the U.S.S.G. § 3B1.1 issue, arguing that Defendant should not be scored an additional two points as a leader of the conspiracy, and argued for a two point reduction. (Sentencing Memo., ECF No. 307, pp. 7-8; Sentencing Hearing Tr., ECF No. 311, p. 4-5.) Defendant's counsel also objected to the probation department's criminal history category

determination finding that Defendant was on probation at the time of the offense. (Sentencing Memo., ECF No. 307, pp. 1-2, 8; Sentencing Hearing Tr., ECF No. 311, p. 10-11.)

Defendant's counsel's actions were not unreasonable: on multiple occasions he argued against the leadership points and criminal history category. It is worth noting that, as the Government points out, Defendant was ultimately sentenced to 96 months in prison, which is below the guideline ranges calculated by the Government in the plea agreement (168-210 months), by the Court (188 to 235 months) and below the guideline range which his counsel recommended (135-168 months). (ECF Nos. 204, 311.) Even if the Court were to have found Counsel's performance unreasonable, Defendant has not established prejudice, he has not shown a reasonable probability that but for any error by his counsel, his sentence would have been different.

The Court denies Defendant's § 2255 motion to vacate, set aside or correct his sentence.

IV. **Certificate of Appealability**

Federal Rule of Appellate Procedure 22(b) provides that a petitioner cannot take an appeal in a § 2255 proceeding unless a certificate of appealability is issued under 28 U.S.C. § 2253(c). Rule 11 of the Rules Governing Section 2255 Proceedings requires that a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.

322, 336 (2003) (quotation marks and citation omitted).

Because Defendant has failed to show that reasonable jurists could debate whether his petition should have been resolved in a different matter, the Court denies him a certificate of appealability.

## V. Conclusion

For the reasons set forth herein, the Court denies Defendant's 28 U.S.C. § 2255 motion (ECF Nos. 365, 373.)

**SO ORDERED.**

                              s/Nancy G. Edmunds
                              Nancy G. Edmunds
                              United States District Judge

Dated: June 28, 2021

I hereby certify that a copy of the foregoing document was served upon parties and counsel of record on June 28, 2021, by electronic and/or ordinary mail.

                              s/Lisa Bartlett
                              Case Manager